**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| PHILLIP J. LOUIS, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-134ML |
| | ) | |
| ALBERTO R. GONZALES, ET AL., | ) | |
| Respondents. | ) | |

**<u>RESPONDENTS' MOTION FOR SUMMARY JUDGMENT</u>**

COMES NOW, Respondents, Alberto Gonzales, Attorney General of the United States, Michael Chertnoff, Secretary of the Department of Homeland Security, Emilio T. Gonzalez, Director of the United States Citizenship and Immigration Services, and Denis Riordan, Boston District Director of the United States Citizenship and Immigration Services, and moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Ly T. Nguyen
LY T. NGUYEN, Bar No. 66676
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000(ph)/401-709-5017 (fax)
Email: ly.nguyen@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| PHILLIP J. LOUIS,<br>Petitioner, | ) | |
| v. | ) | C.A. No. 07-134ML |
| ALBERTO R. GONZALES, ET AL,<br>Respondents. | ) | |

**MEMORANDUM IN SUPPORT OF**
**RESPONDENTS' MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Petitioner Phillip Louis seeks review of the denial of his application for naturalization. Although he does not mention the statute, his request for review is properly submitted pursuant to 8 U.S.C. § 1421(c). Petitioner's application for naturalization appears to be based on eligibility under Section 316 of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1427, which provides that individuals with at least five years lawful permanent residency and who meet the other requirements set forth in that section, such as good moral character and requisite physical presence, are eligible to apply for naturalization.

The U.S. Citizenship and Immigration Service ("CIS") denied Petitioner's application based upon its finding that Petitioner lacked good moral character, as he provided false testimony in an attempt to gain an immigration benefit when he completed his application for naturalization and while under oath during a December 6, 2004, interview on the contents of his naturalization application. Specifically, Petitioner failed to disclose a charge and arrest on February 12, 1986, for armed robbery with use of a firearm on his application for naturalization. In addition, during the December 6, 2004 interview, when Petitioner was asked whether he had

ever been arrested for breaking or violating any law or ordinance, he failed to indicate that he had been arrested on February 12, 1986, for armed robbery with use of a firearm.

## II. FACTS

Petitioner is a native and citizen of the Commonwealth of Dominica. Ex. 1, Attach. A. He became a lawful permanent resident of the United States on or about July 13, 1982. Ex. 1, Attach A. On February 12, 1986, Petitioner was arrested by the Richmond, Virginia Police Department and charged with armed robbery with use of a firearm. Ex. 1, Attach. B at 3.

On April 19, 2004, Petitioner filed an application for naturalization, Form N-400, with CIS. The application instructed the applicant, "[f]or the purpose of this application, you must answer "Yes" to the following questions, if applicable, even if your records were sealed or otherwise cleared or if anyone including a judge, law enforcement officer, or attorney, told you that you no longer have a record." Ex. 1, Attach. D at 8. The application specifically sought information regarding the following: "Have you **EVER** been arrested, cited, or detained by any law enforcement officer (including the INS and military officers) for any reason?" Ex. 1, Attach. D at 8. In response, Mr. Louis checked the box marked "Yes." With regard to whether he had been arrested, cited, or detained by any law enforcement officer, Mr. Louis further elaborated in the application that:

1. his "ex-wife life lied to police" on July 18, 2002, in Brockton [Massachusetts];
2. "driving on suspended [license]" on September 11, 1997, in Attleboro [Massachusetts]; and
3. "bounce check" on June 11, 1997, in Brockton [Massachusetts] .

<u>See</u> Ex. 1, Attach. D at 8.

In a letter dated July 10, 2004, CIS instructed Petitioner to bring additional documents to his interview. Ex. 1, Attach. E. The letter stated, "You indicated in your application that you

have been arrested and an FBI background check using your fingerprints also revealed that you have an arrest record. For these arrests and any other incidents in which you may have been involved, bring originals or CERTIFIED copies of all arrest records and court dispositions showing how each incident was resolved. Failure to disclose any and all arrests may result in denial of your application." Ex. 1, Attach. E.

On December 6, 2004, Petitioner was interviewed, under oath, by designated examiner, Stephen W. Higgins, concerning the information contained in his application.[1] Ex. 1, Attach. D at 10. At the December 6, 2004 interview, Mr. Louis indicated that he had been arrested on three occasions: July 18, 2002, because his "ex-wife lied to police;" September 11, 1997, for "driving on a suspended [license];" and June 11, 1997, for "bounce check." Ex. 1, Attach. D at 8. At some point during the examination, Petitioner admitted to several other arrests in Massachusetts. Ex. 1 at 12, Attach. F. The handwritten notes of Stephen W. Higgins, examiner, written in red ink on the application for naturalization, indicated that Mr. Louis told the examiner that he had "no other arrests or records." Ex. 1 at ¶ 10, Attach. D at 8. This correction was marked number "6." Ex. 1 at ¶ 10; Attach. D at 8. At the conclusion of the interview, Petitioner re-signed the N-400 affirming that the information in the naturalization application, including the corrections numbered 1 through 7 were true and correct. Ex. 1, Attach. D at 10.

On April 6, 2006, CIS issued a decision denying Mr. Louis' application for naturalization due to lack of good moral character. Ex. 1, Attach. F. In the decision, CIS noted that Mr. Louis failed to disclose his arrest on February 12, 1986, by the Richmond, Virginia Police for armed

[1] It was a common practice at the time of Mr. Louis' naturalization examination for the examiner to review the N-400 with the applicant orally, under oath, to reflect the applicant's oral changes on the naturalization application in red and numbered, and to have the applicant resign the application. Ex. 1 at ¶ 8.

robbery and using a firearm during the commission of a felony. Ex. 1, Attach. F. Subsequently, Petitioner filed a Request for Hearing on a Decision Naturalization Proceedings. Ex. 1, Attach. G. In his request, Petitioner stated that he "blocked out" the arrest "due to the nature of the situation" that he was "falsely arrested." Ex. 1, Attach. G at 1-2. In addition, he stated that he asked for the police report on himself to remind him of all the incident dealings with the courts,[2] and since that arrest was not included, he "totally forget [sic]" to include the arrest. Ex. 1, Attach. G at 1-3.

On September 14, 2006, Petitioner was interviewed by a CIS examiner on his appeal application. Ex. 1, Attachs. H-I. During the interview, Petitioner indicated that because the armed robbery arrest was not on his Massachusetts background check, he did not put it on the application. Ex. 1, Attachs. I-J. In addition, Petitioner stated that there was a trial regarding the armed robbery arrest. Ex. 1, Attachs. I-J.

On December 13, 2006, CIS issued a final decision denying Petitioner's naturalization application. Ex. 1, Attach. I. CIS determined that Petitioner gave false testimony on his N-400 application by failing to disclose a charge of armed robbery with use of a firearm. Ex. 1, Attach. I.

Petitioner then filed his Petition for Review with this Court on or about April 11, 2007.

## III. ARGUMENT

Petitioner bears the burden of proof that he meets all the requirements for naturalization, including that he is and has been a person of good moral character. 8 U.S.C. § 1427. "The burden is on the alien applicant to show his eligibility for citizenship in every respect." INS v.

---

[2] Notably, Petitioner only requested a background check from Massachusetts. See Ex. 1, Attach. I.

Pangilinan, 486 U.S. 875, 885 (1988) (citing Berenyi v. District Director, INS, 385 U.S. 630, 637 (1967)). Any doubts are resolved in favor of the United States. Berenyi, 385 U.S. at 637. In Berenyi, the Supreme Court stated:

> When the Government seeks to strip a person of citizenship already acquired ... it carries the heavy burden of proving its case by "clear, unequivocal, and convincing evidence." But when an alien seeks to obtain the privileges and benefits of citizenship, the shoe is on the other foot... Because that status, once granted, cannot lightly be taken away, the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship. For these reasons, it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect. This Court has often stated that doubts "should be resolved in favor of the United States and against the claimant."

Berenyi, at 636-637 (emphasis added) (quoting United States v. MacIntosh, 283 U.S. 605, 626 (1931)) . “The freedoms and opportunities secured by United States citizenship long have been treasured by persons fortunate enough to be born with them, and are yearned for by countless less fortunate". Plewa v. INS, 77 F. Supp. 2d 905, 909 (N.D. Ill. 1999) (quoting Fedorenka v. United States, 449 U.S. 490, 522 (1981). "Because the right to become an American citizen is such a precious one, no less precious than the right to liberty and life, there must be strict compliance with all the congressionally imposed prerequisites before conferring citizenship.” Id.

Morever, courts have no authority to confer citizenship if the statutory requirements have not been strictly met. Pangilinan, 486 U.S. at 884-85 ( "[t]he Congressional command ... [is manifestly clear], [n]either by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of [statutory] limitations"); see also, Miller v. Albright, 523 U.S. 420, 456 (1998) (concurring opinion) (stating that "[b]ecause only Congress has the power to set the requirements

for acquisition of citizenship by persons not born within the territory of the United States, federal courts cannot exercise that power under the guise of remedial authority").

As noted, the burden of proof is on petitioner to "establish his eligibility for citizenship in every respect" by "clear, unequivocal, and convincing evidence." Berenyi, 385 U.S. at 636-37 and MacIntosh, 283 U.S. at 626. Respondents' motion should be granted because, as a matter of law, Petitioner lied to obtain an immigration benefit when attempting to obtain naturalization, and cannot establish the requisite good moral character during the time period in question.

**A. STANDARD OF REVIEW**

The court reviews denial of an application for naturalization de novo and makes its own findings of fact and conclusions of law regarding eligibility for naturalization. 8 U.S.C. § 1421©. Title 8, United States Code, Section 1421© , provides:

> A person whose application for naturalization under this subchapter is denied, after a hearing a before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States District Court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the Petitioner, conduct a hearing de novo on the application.[3]

**B. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party must "go

[3] In Petitioner's petition for review filed on April 11, 2007, Petitioner did not request a hearing.

beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of fact for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted). Petitioner has the burden in this case to prove good moral character. Since he cannot do so, summary judgment in favor of Defendants is appropriate. See Islam v. Harrington, No. 3:00-CV-1683, 2001 WL 1335851, at *6-9 (N.D. Tex. Oct. 21) (granting summary judgment where petitioner answered untruthfully to question of whether he had ever been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law of ordinance excluding traffic regulations) (Attached as Ex. 3).

## B. THE REQUIREMENT OF GOOD MORAL CHARACTER

To be eligible for naturalization, 8 U.S.C. § 1427(a) requires that an applicant must be a person of good moral character for five years before applying for naturalization, and must remain a person of good moral character to date. Id.[4] Thus, Petitioner must establish that he is currently a person of good moral character, and that he has been since at least April 19, 1999.

There are eight specific categories which preclude a finding of good moral character, including when an applicant has given false testimony for the purpose of obtaining any immigration benefit. 8 U.S.C. § 1101(f); see also, Opere v. INS, 267 F.3d 10, 13 (1st Cir. 2001) (there are eight categories of conduct that render an individual per se lacking in good moral

---

[4] It is worthy of note that in determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in subsection (a), "the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period." 8 U.S.C. § 1427(e) (emphasis added).

character, including giving false testimony for the purpose of obtaining immigration benefits).

Title 8, United States Code, Section 1101(f), provides, in pertinent part:

> For the purposes of this chapter--
>
> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was–
>
> . . .
>
> (6) one who has given false testimony for the purpose of obtaining any benefits under this chapter.

8 U.S.C. § 1101(f).

In addition, 8 C.F.R. § 316.10(b) provides that:

> An applicant shall be found to lack good moral character, if the applicant . . . [h]as given false testimony to obtain any benefits from the Act, if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit; this prohibition applies regardless of whether the information provided in the false testimony was material, in the sense that if given truthfully it would have rendered ineligible for benefits either the applicant or the person on whose behalf the applicant sought the benefit.

If an individual makes such statements with the "subjective intent of obtaining immigration benefits," he or she is statutorily precluded from establishing good moral character under this provision. Kungys v. United States, 485 U.S. 759, 781 (1988).

In addition to the eight specified categories which preclude a finding of good moral character, there is also a "catch-all" provision in this section. "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. §1101(f)(8).

Petitioner does not contest that the statements he made on December 6, 2004, in connection with his attempt to obtain naturalization, were under oath. In addition, there is no genuine dispute that he failed to disclose his arrest for armed robbery with use of a firearm both

in his naturalization application and in his December 6, 2004 interview. See Ex. 1, Attach. B, D at 8. Liberally construed, Petitioner appears to be contesting the CIS' conclusion that he gave the false testimony with the intent to obtain an immigration benefit. See Ex. G.

There are several reported cases in which courts have denied citizenship to aliens for false testimony. In Berenyi, the Supreme Court upheld a denial of naturalization because an alien did not disclose the fact that he was a member of the Communist Party in order to facilitate his naturalization. Berenyi, 385 U.S. at 638. In Del Guerico v. Pupko, 160 F.2d 799 (9th Cir. 1947), an alien was denied naturalization for falsely testifying that she had never been arrested, despite having been convicted twice. Similarly, in In re Haniatakis, 376 F.2d 728, 729 (3d Cir. 1967), the court upheld a denial of naturalization because the alien stated that she was unmarried, due to her fear that revealing her marriage to an alien who had been arrested for illegal entry into the United States would delay her naturalization. In addition, in Aboud v. INS, 876 F. Supp. 938, 941 (S.D. Ohio 1994), the plaintiff gave false testimony three times regarding his criminal history and work history, but claimed that he misunderstood questions regarding previous arrests. The court rejected this argument in light of the plaintiff's demonstrated command of the English language evidenced by his college studies and his testimony before the court.

Courts have, however, excused "misstatements" in instances where an alien is found to have misunderstood proceedings, or to have been following bad advice. See Plewa, 77 F. Supp.2d 905, 912-13 (N.D. Ill. 1999) (finding alien who had relied upon advice of counsel that she need not disclose arrest to have good moral character, despite false statements to the INS); see also Petition of Zele, 140 F.2d 773, 774-77 (2d Cir. 1944) (alien who relied upon erroneous

advice of immigration attorney and INS employee found to have good moral character). Notably, in this case, no evidence of such mitigating circumstances exist. Petitioner has not alleged any misunderstanding of the questions that were asked of him, nor has Petitioner alleged that he relied on erroneous advice.

Rather, the facts of this case show that Petitioner did have the subjective intent to deceive the CIS to obtain naturalization. The application specifically sought information regarding the following: "Have you **EVER** been arrested, cited, or detained by any law enforcement officer (including the INS and military officers) for any reason?" Ex. 1, Attach. D at 8. In response, Mr. Louis checked the box marked "Yes." Mr. Louis further elaborated that, his "ex-wife life lied to police" on July 18, 2002, "driving on suspended [license]" on September 11, 1997, and "bounce check" on June 11, 1997. Ex. 1, Attach. D at 8. Correction number six, indicated the following change, "no other arrests or records." Petitioner indicated, under oath, on the naturalization application that all the information contained therein, including the corrections numbered one through seven, was true and correct. Ex. 1, Attach. D at 10. The application also instructed the applicant, "[f]or the purpose of this application, you must answer "Yes" to the following questions, if applicable, even if your records were scaled or otherwise cleared or if anyone including a judge, law enforcement officer, or attorney, told you that you no longer have a record." Ex. 1, Attach. D at 8.

Petitioner was further instructed to disclose all of his arrests in a letter dated July 10, 2004, from CIS, and was warned that failure to disclose all arrests could result in denial of his application. Ex. 1, Attach. E. The July 10, 2004, letter specifically stated, "[y]ou indicated in your application that you have been arrested and an FBI background check using your fingerprints also revealed that you have an arrest record. <u>For these arrests and any other</u>

incidents in which you may have been involved, bring originals or CERTIFIED copies of all arrest records and court dispositions showing how each incident was resolved. Failure to disclose any and all arrests may result in denial of your application." Ex. 1, Attach. E (emphasis added).

Despite these repeated instructions, Petitioner failed to reveal his February 12, 1986, arrest for armed robbery with use of a firearm. See Ex. 1, Attach. D at 10, B at 3. Petitioner states that he did not disclose this arrest because he "blocked out" the arrest" due to the nature of the situation that he was falsely arrested and because this arrest was not listed in the Massachusetts police report, he "totally forget [sic]" to include the arrest in his statements. See Ex. 1, Attach. F at 3, I.

Petitioner's explanation that he forgot about his arrest and charge for armed robbery with use of a firearm is not credible in light of the fact that he went to trial on the charge. Ex. 1, Attachs. I-J. Moreover, at the appeal hearing for his naturalization application, he did not have any difficulty recalling various details of the arrest. Ex. 1, Attachs. I-J. See also Nguyen v. Monica, 3:CV-05-1321, 2006 WL 3437543, at *3-4 (M.D. Pa. Nov. 29, 2006) (finding that petitioner did not meet her burden of proving that she was person of good moral character where petitioner claimed nervousness caused her to "forget" arrests) (Attached as Ex. 3); Butt v. U.S. Citizenship and Immigration Servs., No. 06-805, 2007 WL 446922, at *4 (D.N.J, Feb 7, 2007) (denying naturalization application where petitioner claimed he forgot about arrest) (Attached as Ex. 4).

As Petitioner has the burden of establishing his eligibility for naturalization, and as he cannot, as a matter of law, demonstrate that he did not make the false statements with the

subjective intent of facilitating the grant of his naturalization petition, summary judgment should be granted.

Moreover, Petitioner is not forever barred from applying for citizenship. As a lawful permanent resident who has not been placed in removal proceedings, Petitioner would again be eligible to apply for naturalization under 8 U.S.C. § 1427 in December 2009.[5]

## V. CONCLUSION

For the forgoing reasons, Respondents respectfully requests that the Court enter judgment in its favor and deny the petitioner for review.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Ly T. Nguyen
LY T. NGUYEN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
Email: ly.nguyen@usdoj.gov

---

[5] Petitioner's lack of good moral character is based on his failure to disclose an arrest, and not the permanent life-time bar such as a conviction for an aggravated felony. Therefore, he may apply for naturalization again when he becomes statutorily eligible. Under 8 U.S.C. § 1427, an applicant must demonstrate that he has good moral character for the five years preceding his application and onward.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by first-class mail, postage pre-paid, on the Petitioner by mailing on the day of July, 2007, to:

Phillip J. Louis
52 Borinquen Street
Providence, RI 02905