Islam v. Harrington
N.D.Tex.,2001.
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.
Jahedul ISLAM Petitioner,
v.
William HARRINGTON, District Director, and Immigration & Naturalization Service, Respondents.
**No. 3:00-CV-1683-P.**

Oct. 23, 2001.

MEMORANDUM OPINION AND ORDER
SOLIS, District J.
***1** Now before this Court are:
(1) Petitioner Jahedul Islam's "Petition For Review," filed on August 2, 2000;
(2) Federal Respondent's "Response in Opposition to Petitioner's Request for Judicial Review of his Naturalization Denial, and Respondent's Motion to Dismiss and Brief in Support Thereof," filed April 27, 2001; and
(3) Petitioner's "Motion in Opposition to Federal Respondent's Motion to Dismiss," filed on June 1, 2001.

For the reasons stated below, this Court is of the opinion that Petitioner's application for naturalization should be DENIED and Respondents' Motion to Dismiss should be GRANTED.

## BACKGROUND

Petitioner Jahedul Islam ("Islam") brings this proceeding pursuant to 8 U.S.C. § 1421(c), seeking review of the denial by respondent Immigration and Naturalization Service ("INS" or "Service") of his application for naturalization. The Service's decision was issued by its District Director William Harrington and was based on the findings made after a § 1447(a) hearing before a duly designated District Adjudications Officer. *See* App. Resp't Resp. at 11-12 (hereinafter "App."). After reviewing his application, the INS concluded that Islam lacked the requisite good moral character to become a naturalized citizen when he offered false information regarding two previous arrests and because he was convicted of a crime involving moral turpitude during the statutory period preceding the filing of his application. *See* App. at 12. Mr. Islam thereafter filed his Petition for Review, now presently before this Court, challenging the Order of respondent INS denying his application for naturalization.

## STANDARD OF REVIEW

Congress, as part of the Immigration and Naturalization Act ("INA"), granted jurisdictional authority to the federal district courts to review the denial of an application for naturalization. *See* *Nagahi v. INS,* 219 F.3d 1166, 1167 (10th Cir.2000). More specifically, under § 1421(c):

"A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be *de novo,* and the Court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application."

8 U.S.C. 1421(c) (2001).[FN1] Although Petitioner here failed to request a "hearing," asking only for a "review" of his application, nevertheless, pursuant to § 1421(c), the Court, based on the record before it as submitted by the parties, makes the following *de novo* findings of fact and conclusions of law.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

GOVERNMENT EXHIBIT 2

FN1. Section 1447(a) provides that "if, after an examination under Section 1446 [the initial investigation of applicants for naturalization] an application for naturalization is denied, the applicant may request a hearing before an immigration officer." 8 U .S.C. § 1447(a) (2001). Thus, a decision on naturalization following such an INS hearing constitutes a final determination and an exhaustion of a petitioner's administrative remedies. *See* 8 C.F.R. § 336.9 (2001). Because Islam's naturalization application was denied after such a hearing before an INS officer on December 14, 1999, *see* App. 12, the Court's jurisdiction under § 1421(c) is properly invoked.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

I. Findings of Fact

Petitioner is a 34-year-old male, native and citizen of Bangladesh. *See* App. at 1. Though his original entry date to the United States is protected by confidentiality under § 210(b)(6) [8 U .S.C. § 1160(b)(6) ] as an immigrant special agricultural worker, *see* Resp't Resp. at 2 (hereinafter "Resp."), he attained the status of permanent resident on December 1, 1990. *See* App. at 1. Thereafter, on or about December 4, 1995, he filed an INS Form N-400 application for naturalization on the basis of having been a permanent resident in the United States for a period of at least 5 years. *See* Id. 1-4.

***2** In his application for naturalization, Part 7, Question 15, Petitioner was asked whether he had ever: (a) "knowingly committed any crime for which [he] had not been arrested" or (b) "been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance excluding traffic regulations." App. at 3. As originally executed, Petitioner's answer was "no" to both these questions. Id. A later fingerprint check performed by the Service revealed that Petitioner had in fact been arrested in Los Angeles, California on July 5, 1990 and that a complaint had been filed on July 24, 1990 charging him with the offenses of (1) Theft of Property, (2) Embezzlement by Employee, and (3) TrespassInjure Property. *See* App. at 5. On July 27, 1990, after being arraigned and advised of his rights, Mr. Islam plead guilty to the charge of Trespass-Injure Property, and the court sentenced him to a period of 12 months probation and ordered him to pay a total of $245.00 in fines and restitution. *See* Id at 5-6.

Thereinafter, Mr. Islam also admitted to an arrest on May 19, 1996 for Assault/Contact-Family Violence in Dallas, Texas. *See* Resp. at 2; *see* also App. at 7. Mr. Islam indicated to the INS examiner that this was an altercation between himself and his wife where she had called the police and he was arrested. *See* Resp. at 2. Later, on August 27, 1996, he plead guilty to this offense in Dallas County and was assessed a total of $243.00 in fines and costs by the court. *See* App. at 7.

Following an initial interview with the INS on July 8, 1996, and pursuant to the investigation and examination of his application for naturalization, Mr. Islam's application for naturalization was denied. *See* App. at 8. In a letter dated September 14, 1999, the INS determined that Petitioner was ineligible for naturalization because he did not meet the requirements for good moral character under Section 316(a) [8 U.S.C. 1427(a) ] of the INA and Title 8, Code of Federal Regulations, Part 316.10(b)(3) because of his California conviction as well as for his recent arrest for Assault in Dallas County. *See* Id. at 8-9.

Petitioner timely filed a request for review of this decision under Section 336(a) [8 U.S.C. § 1447(a) ] of the INA, and through his attorney, stated that his application for naturalization was wrongfully denied and that he could demonstrate good moral character. *See* App. at 11. At this subsequent hearing, held before a duly designated District Adjudications Officer on December 14, 1999, Islam failed to offer any additional evidence in support of his application. *See* Id. at 12. Thereafter, in a letter dated April 13, 2000, District Director William Harrington informed Petitioner that the INS had once again determined he did not meet the good moral character requirement of the Act and had

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

failed to overcome the denial of his application for naturalization. *See* Id. at 12. In denying the application, the INS considered his 1990 California arrest and conviction as relevant conduct in determining his current moral character, as well as found that his August 27, 1996 conviction in Dallas County, Texas constituted a crime involving moral turpitude which occurred during the relevant 5 year statutory period. *See* Id.

II. Jurisdiction

*3 A person may seek review of a denied application for naturalization, after a hearing before an INS officer under § 1447(a), in the United States district court for the *district in which such person resides.* 8 U.S.C. § 1421(c) (emphasis added). In his Petition for Review, filed on August 3, 2000, Islam failed to include any statement indicating his current place of residence. The most recent information in the record regarding Petitioner's address is found in the April 13, 2000 correspondence between Respondent and Petitioner, wherein he was informed of the denial of his § 1447(a) hearing by the Service. *See* App. at 11. The address listed for Islam in that letter is in Garland, Texas. *See* Id. Garland being located in Dallas County, which is within the Northern District of Texas, and considering that Islam's petition was timely filed after the denial of his § 1447(a) hearing, the Court finds jurisdiction is proper in this case. *See supra* footnote 1; *see also* 8 C.F.R. § 336.9 (2001) (demanding that an applicant shall file his petition for review within a period of 120 days after the Service's final determination).

III. Respondent's Motion to Dismiss

Having concluded that this Court is a proper forum for this action, the Court must next determine the propriety of Respondent's motion to dismiss, filed in conjunction with its opposition to judicial review. Neither the Administrative Procedures Act, nor § 1421(c) make any comment as the applicability of the Federal Rules of Civil Procedure to petitions for review of naturalization denials. *See Jiwani v. INS,* No. 3:00-CV-1077-X, 2001 WL 322421 (N.D.Tex. Mar. 30, 2001) (Kendall, J.) (*adopting* Findings, Conclusions and Recommendation, 2001 WL 258409 at *2 (N.D.Tex. Mar. 13, 2001) (Boyle, Mag. J.)). However, the Federal Rules are said to govern the procedure in the United States district courts in all suits of a civil nature, whether cognizable as cases at law or in equity, subject only to the exceptions stated in Rule 81. *See* Fed. R. Civ. P 1.

As for Rule 81, despite setting forth many exceptions, it nevertheless states that "these rules are applicable to proceedings for admission to citizenship ... to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil action." Fed. R. Civ. P 81(a)(2); *see also Jiwani,* 2001 WL 258409 at *2 n. 3 (denial of naturalization at least arguably appears to be a proceeding for admission to citizenship). Therefore, consistent with Rule 81(a)(2) and Rule 1's admonition that courts shall construe and administer these rules "to secure the just, speedy, and inexpensive determination of every action," the Court finds no reason why that the Federal Rules of Civil Procedure should not apply to these *de novo* immigration proceedings commenced under 8 U.S.C. § 1421(c).

Consequently, the Federal Rules allow a party to move for a dismissal when an action brought against it when it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P 12(b)(6). Though the Federal Respondent here did not specifically identify this ground as the basis for its motion to dismiss, based on its argument that Petitioner is statutorily ineligible for naturalization due to a lack of good moral character, *See* Resp. at 4, the Court will construe its motion as such.

*4 At any rate, if on a motion asserting the defense of failure to state a claim, matters outside the pleadings are presented to and not excluded by the court, the motion shall thereafter be treated as one for summary judgment and shall be disposed of as provided under Rule 56. *See* Fed.R.Civ.P. 12(b). In this instance, both Respondent and Petitioner have provided the Court with matters outside the petition filed in this action. As such, the parties are

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

considered to have been given a reasonable opportunity to present all material evidence made pertinent to such a motion under Rule 56, and the Court decides this motion brought by Respondent as such. *See* Id.

Therefore, pursuant to Rule 56, summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). It is appropriate in *any* case where the critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1076 (5th Cir.1994). However, all evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and of identifying those portions of the record that demonstrate such an absence. *Celotex,* 477 U.S. at 323. Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The mere existence of some factual dispute will not defeat a motion for summary judgment. *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir.1995). Only disputes over facts that might affect the outcome of the suit under the governing law will preclude summary judgment. *Id.*

The party opposing a motion supported by evidence cannot discharge his burden by alleging mere legal conclusions. *See Anderson,* 477U.S. at 248. Instead, the party must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *See Id.* The Court will not, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Little,* 37 F.3d at 1075. Thus, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which he bears the burden of proof, summary judgment must be granted. *Celotex,* 477 U.S. at 322-23.

IV. Conclusions of Law

*5 In naturalization proceedings, when an alien seeks to obtain the privileges and benefits of citizenship, it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect, and any doubts that may exist are resolved in favor of the United States. *See Berenyi v. Dist. Dir., INS,* 385 U.S. 630, 637 (1967). As such, there must be strict compliance with all congressionally imposed prerequisites to the acquisition of citizenship. *See Fedorenko v. United States,* 449 U.S. 490, 506 (1981).

Under the INA and the regulations promulgated thereunder, the general requirements for naturalization specify that no person shall be naturalized unless such an applicant:
"(1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years, ... and had been physically present therein for periods totaling at least half of that time, (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to *has been and still is a person of good moral character....* "

8 U.S.C. § 1427(a) (2001) (emphasis added); *see also* 8 C.F.R. § 316.2(7) (2001). The burden is on the applicant to demonstrate that, during the statutorily prescribed period, he has been and continues to be a person of good moral character. *See* 8 C.F.R. § 316.10(a)(1) (2001).

Mr. Islam in this case argues that he is entitled to a favorable judgment because he has demonstrated that he satisfies all the prerequisites for naturalization, including that he is a person of good

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

moral character. *See* Pet'r Mot. Opp'n at 1. Taking as true the information provided in Mr. Islam's application for naturalization, INS Form N-400, the Court finds that Petitioner satisfies the continuous residence and longevity requirements as set out under § 1427(a) of the Act. *See* App. 1-4. Therefore, the only remaining question for the Court to decide is whether he also satisfies the requirements of good moral character during the relevant statutory period.

Congress has erected several statutory bars to a finding that an applicant possesses good moral character. Relevant here is the command that:

"No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is or was ... one who has given false testimony for the purpose of obtaining any benefits under this chapter."

8 U.S.C. § 1106(f)(6) (2001); *see also* 8 C.F.R. § 316.10(b)(2)(vi) (2001) (an applicant shall be found to lack good moral character if, during the statutory period, he has given false testimony to obtain any benefit from the Act, if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit, regardless of whether the information provided was material). The Supreme Court has interpreted this section to mean precisely what is says: a person may be deemed of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the *subjective intent* of obtaining immigration or naturalization benefits. *See Kungys v. United States,* 485 U.S. 759, 779-780 (1988) (emphasis added).

***6** In this case, the Court finds that Petitioner did in fact answer untruthfully the question of whether he had ever been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law of ordinance excluding traffic regulations. *See* App. at 3-4. Petitioner does not dispute, nor could he, the uncontroverted evidence that at the time of his application he had been arrested and convicted in California for the crime of TrespassInjure Property in 1990. Similarly, the evidence is clear that within the relevant statutory period, Petitioner was also arrested and convicted in Dallas, Texas for the crime of Assault/ContactFamily Violence in 1996. *See* Resp. at 2; *see* also App. at 7.

In *Chaunt v. United States,* 364 U.S. 350, 353-354 (1960), the Supreme Court held that the failure to disclose a record of arrests in naturalization proceedings is not, by itself, an automatic disqualification when a "totality of the circumstances surrounding the offenses charged makes them of extremely slight consequence." In that case, the Court refused to sanction the denaturalization of a citizen for failure to disclose prior arrests in his naturalization application because "the arrests were made some years prior to the critical five-year period, ... no fraudulent conduct was involved, ... and they did not involve [crimes of] moral turpitude within the meaning of the law." *Chaunt,* 364 U.S. at 353 (involving distributing handbills, making a speech, and a breach of the peace; all eventually disposed by either discharge, noll prosecution or suspended sentence). However, the Court did note that "had they involved moral turpitude ... or conduct which even peripherally touched types of activity which might disqualify one from citizenship, a different case would [have been] presented." *Id.,* 364 U.S. at 354. As such, the facts in *Chaunt* are distinguishable from the instant case because, although Mr. Islam's California arrest and conviction did not occur during the "critical five-year period," the Dallas County arrest and conviction of Petitioner clearly did. Moreover, Petitioner's arrests involved charges, e.g., Theft of Property, Embezzlement by Employee, Trespass-Injury Property and Assault/ContactFamily Violence, which cannot be deemed irrelevant to the statutory qualifications for citizenship. *See United States v. Oddo,* 314 F .2d 115, 118 (2nd Cir.1963) (arrests for homicide, assault and robbery not deemed irrelevant by the court).

Petitioner here falsely answered "no" to Part 7, Question 15 and later signed Form N-400, notwithstanding the fact that it contained the sentence "I swear or affirm, under penalty of perjury under the laws of the United States of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

America that this application, and the evidence submitted with it, is all true and correct." *see* App. at 4. Yet still, he did not offer any mitigating or explanatory evidence as to the reasons for his misrepresentations, besides his mere legal conclusions that he satisfies all the prerequisites for naturalization. *Compare Plewa v. INS,* 77 F.Supp.2d 905, 912 (N.D.Ill.1999) (plaintiff relying on erroneous advice from immigration counselor was found to have good moral character despite failing to disclose an arrest on her naturalization application); *see also Chan v. INS,* No. 00 MISC 243(FB), 2001 WL 521706 at *8 (E.D.N.Y. May 11, 2001) (it is only dishonestly accompanied by this precise intent of obtaining immigration benefits that Congress found morally unacceptable). Therefore, the Court concludes that Mr. Islam's act of signing his name to Form N-400 constituted the subjective intent to deceive the INS about these arrests and obtain benefits under the INA through the concealment of his arrest record. *See Oddo,* 314 F.2d at 117.

*7 Even if the Court were to consider Petitioner's acts outside any of the enumerated disqualifications under § 1106(f), this fact would not preclude a finding, that for other reasons, he may be found to lack good moral character. *See* 8 U.S.C. § 1106(f) (2001). Under the Service's regulations, an applicant shall be found to lack good moral character if, during the statutory period, he has committed one or more crimes involving moral turpitude, other than a purely political offense, for which the applicant was convicted. *See* 8 C.F.R. § 316.10(b)(2)(i) (2001). The regulations also include a catch-all provision which states that unless the applicant establishes extenuating circumstances, he shall be found to lack good moral character if, during the statutory period he has committed unlawful acts that adversely reflect upon the applicant's moral character, or was convicted or imprisoned for such acts. *See* 8 C.F.R. § 316.10(b)(3) (2001). As previously stated, the evidence here is unequivocal that Petitioner was arrested and later plead guilty on August 27, 1996 to the offense of Assault/ContactFamily Violence in Dallas County, Texas. *See* App. at 7. Petitioner chose not to submit any brief or statement concerning this incident, but chose to rely on the evidence he submitted to the Service with his original application, as well as a later filed Appendix to his Petition for Review.[FN2] As such, the only information in the record with regards to this incident, besides a copy of the docket sheet relative to this conviction, is a statement appearing in Respondent's brief suggesting that Petitioner indicated to the INS examiner that "this was an altercation between his wife and himself where his wife called the police and [he] was arrested." Resp. at 2. No evidence was submitted by Petitioner to deny or complement this statement, nor was any evidence of extenuating circumstances presented by Mr. Islam as to this incident. Therefore, the Court must decide whether Mr. Islam's conviction for assault against his wife constitutes a crime involving moral turpitude for purposes of his petition of naturalization.

FN2. The appendix submitted by Petitioner, filed on September 21, 2001, included a copy of his (1) Form N-400 Application for Naturalization, (2) docket sheet for the California charges and conviction, (3) docket sheet for his Texas conviction, (4) notice to appeal on denial of N-400, (4) a letter of reference from Dillard Department Store, Inc. and (5) letter of reference from Nordstrom.

"Moral turpitude" is defined as "conduct that is contrary to justice, honesty, or morality." Black's Law Dictionary1026 (7th ed.1999). More specifically, it involves "those act[s] of baseness, vileness, or depravity in the private and social duties which one person owes to another, or to society in general, contrary to the accepted and customary rule of right and duty between people." Id. (*citing* 50 Am.Jur.2d *Libel and Slander* § 165, at 454 (1995)). Other courts, in deciding whether a particular crime involves moral turpitude, have stated that this inquiry should be determined by the statutory definition or by the *nature of the crime* and not by the specific conduct that resulted in the conviction. *See Grageda v. INS,* 12 F.3d 919, 921 (9th Cir.1993) (emphasis added). The nature of the crime involved here is that of an assault committed by Petitioner against his spouse. Because of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

gravity of such a crime, and based on the lack of extenuating circumstances presented by the Petitioner as to this incident, the Court finds that it constitutes such an act of vileness and depravity, contrary to the accepted norms of society and the community, to be considered a crime of moral turpitude. *Compare Grageda,* 12 F.3d at 921 (spousal abuse considered a crime of moral turpitude); *see also Lloyd v. State,* 204 S.W.2d 633, 634 (Tex.Crim.App.1947) (conviction for aggravated assault against a wife constituted moral turpitude); *Hardeman v. State,* 868 S.W.2d 404, 407 (Tex.App. Austin 1993) (conviction for misdemeanor assault by a man against a woman is a crime involving moral turpitude); *Trippell v. State,* 535 S.W.2d 178, 180 (Tex.Crim.App.1976) (offense of aggravated assault on a female is a misdemeanor involving moral turpitude).

***8** Therefore, considering that the burden is on the applicant to demonstrate that, during the statutorily prescribed period, he has been and continues to be a person of good moral character, *see* 8 C.F.R. § 316.10(a)(1) (2001), the Court finds that Petitioner has not satisfied that burden here. Viewing the evidence in the light most favorable to Mr. Islam, the only evidence even remotely resembling support of his contention that he can demonstrate good moral character are the letters of reference from Petitioner's employers submitted in his Appendix to his Petitioner for Review. *See* App. Pet. Review at 9-10 (one employer stating that Mr. Islam was considered a trustworthy and hardworking employee). However, such evidence, by itself, is insufficient to create an issue of fact as to his good moral character here.

Furthermore, the Court finds that the Service was correct in taking into consideration Petitioner's prior arrest and conviction, outside the relevant 5 year statutory period, in determinating his current moral character. Under the INA, when determining whether an applicant has sustained the burden of establishing good moral character, the examination is not limited to the applicant's conduct during the five years preceding the filing of the application, but may also take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period. *See* 8. U.S.C. § 1427(e) (2001); *see also* 8 C.F.R. § 316.10(a)(2) (2001). That is, the examiner may also take into consideration the applicant's conduct and acts at any time prior, *if* the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character. *See* 8 C.F.R. § 316.10(a)(2) (2001). Therefore, the INS did not err in relying upon Petitioner's 1990 California arrest and conviction in denying his naturalization application. *See Gatcliffe v. Reno,* 23 F.Supp.2d 581, 585 (D.V.I.1998) (holding improper for the INS to deny naturalization based solely on petitioner's convictions outside the five-year statutory period).

Therefore, having found that Petitioner does not does not qualify for citizenship, the Court has no discretion to ignore the defect and grant citizenship. *See INS v. Panglinan,* 486 U.S. 875, 883-884 (1988) (*citing Fedorenko,* 449 U.S. at 517). The power to make someone a citizen of the United States was not conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equitable powers. *See Panglinan,* 486 U.S. at 883-884 (1988). Rather, this power has been given them as a specific function to be performed in strict compliance with the terms of the authorizing naturalization statute which provides that "a person may only be naturalized ... in the manner and under the conditions prescribed in this subchapter, *and not otherwise.*" *See Id.* at 884 (emphasis added); *see also* 8 U .S.C. 1421(d) (2001). Accordingly, the Court finds no merit in Petitioner's "Petition for Review," and summary judgment is granted to Respondents.

## CONCLUSION

***9** For the reasons stated above, Petitioner's application for naturalization should be DENIED and Respondents' Motion to Dismiss, converted to a Motion for Summary Judgment by the Court, shall be and is hereby GRANTED.

So Ordered.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

N.D.Tex.,2001.
Islam v. Harrington
Not Reported in F.Supp.2d, 2001 WL 1335851 (N.D.Tex.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.