UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PHILLIP J. LOUIS,

Petitioner,

VS. C.A. No. 07-134ML

ALBERTO R. GONZALES, as Attorney
General of the United States, et al.

Respondents.

**MEMORANDUM IN SUPPORT OF PETITIONER'S OBJECTION TO RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Petitioner, Phillip J. Louis, submitted a Petition for Review of the denial of application for naturalization. Petitioner's application was denied by the U.S. Citizenship and Naturalization Service ("CIS") based upon a finding that he lacked good moral character by providing false testimony for the purpose of obtaining an immigration benefit during an interview conducted on December 6, 2004. Specifically, CIS claims that Petitioner failed to disclose on his naturalization application an arrest and subsequent charge in Richmond, Virginia on February 12, 1986 for armed robbery with use of a firearm.

Petitioner submits this memorandum arguing that he did not possess the subjective intent to deceive the government into obtaining approval of his naturalization application, which is a necessary element in finding that Petitioner possessed good moral character.

## II. FACTS

Petitioner, a native and citizen of the Commonwealth of Dominica, became a lawful permanent resident of the United States on July 13, 1982. (Resp.'s Mem. S.J. Ex. 1, Attach. A.)

On April 19, 2004, Petitioner filed an application for naturalization, Form N-400, with CIS. In his application, Petitioner was asked, "16. Have you **EVER** been arrested, cited, or detained by any law enforcement officer . . . for any reason?" (Resp.'s Mem. S.J. Ex. 1, Attach. D at 8.) Petitioner indicated "yes" on his application and listed three arrests in the Commonwealth of Massachusetts, all of which Petitioner noted were dismissed. (See Resp.'s Mem. S.J. Ex. 1, Attach. A at 8.)

Petitioner received a letter from CIS dated July 10, 2004 instructing him to bring certain documents, including a certified copy of his arrests, to an interview. (Resp.'s Mem. S.J. Ex. 1, Attach. E.) Petitioner obtained a certified copy of his arrest record from the police department in Brockton, Massachusetts, where he resided at the time. (Aff. of Louis, ¶ 4.) At the interview on December 6, 2004, Petitioner was asked by the interviewer whether he had listed all of the arrests on his application. (Aff. of Louis, ¶ 6.) Petitioner provided the interviewer with his arrest record from the Brockton Police Department and stated that he had some issues in Virginia where he used to live, but that it was a false arrest and that "I have completely blocked it out of my mind." (Aff. of Louis, ¶ 7-8.) The interviewer made certain corrections to the application, each numbered and circled, and requested that the Petitioner resign the application.[1] (Resp.'s Mem. S.J. Ex. 1, Attach. D at 8.) As to the question regarding Petitioner's arrest, the examiner's hand written notes state, "no other arrests or records [illegible] case – misunderstood." (Resp.'s Mem. S.J. Ex. 1, Attach. D at 8.)

After the interview, Petitioner received a letter from CIS dated April 6, 2006 stating that

[1] Respondents state in their memorandum that the interviewer made these corrections in red ink. (Resp. Mem. S.J. at 3.) The black ink copy of the application, as corrected by the examiner and provided to Petitioner by Respondents, however, does not contain colored ink. Petitioner can only speculate as to the identity of the specific corrections made in red ink.

his application for naturalization was denied due to a finding that Petitioner lacked good moral character. (Resp.'s Mem. S.J. Ex. 1, Attach. F.) In the decision, CIS refers to the Petitioner's failure to disclose an arrest in Richmond, Virginia on February 12, 1986 for armed robbery and using a firearm during the commission of a felony.[2] (Resp.'s Mem. S.J. Ex. 1, Attach. F.)

Petitioner appealed the Decision, noting on his request for appeal that "due to the nature of false arrest I blocked it off for years and did not see it on my request for a criminal check, as the date was so far away." (Resp.'s Mem. S.J. Ex. 1, Attach. G.) At the subsequent interview on September 14, 2006, Petitioner was asked about the Virginia incident, and relayed certain details that he later learned following a conversation with his mother.[3] (See Aff. Louis, § 12-14, 18-19.)

A final decision dated December 13, 2006 was issued by CIS denying Petitioner's naturalization application, resulting in Petitioner's Petition for Review filed before this Court. (See Resp.'s Mem. S.J. Ex. 1, Attach. I.)

## III. ARGUMENT

### A. STANDARD OF REVIEW

Title 8, section 1421(c) of the United States Code authorizes the court to review a denial of an application for naturalization *de novo*, and thus make its own findings of fact and conclusions of law. 8 U.S.C. § 1421(c). Moreover, the court shall conduct a hearing de novo on

[2] The Decision of July 10, 2004 also notes that "Although the charges were later *dismissed on a technicality*, you failed to disclose this arrest. You denied the Service a pertinent line of inquiry concerning your eligibility for naturalization. . . . It appears you failed to disclose this *conviction* in order to obtain naturalization benefits. Your false testimony reflects adversely on your character." (Resp.'s Mem. S.J. Ex. 1, Attach. F at 3) (emphasis added).

[3] Most of these details learned from his mother about the Virginia arrest and told at the interview were exculpatory in nature. (Aff. Louis, § 12.)

the application at the request of the Petitioner.[4] Id.

Petitioner acknowledges that as an applicant for naturalization he bears the burden to prove naturalization eligibility. 8 U.S. C. § 1427. INS v. Pangilinan, 486 U.S. 875, 885 (1988). Any doubts "should be resolved in favor of the United States and against the [applicant]. Berenyi v. District Director, INS, 385 U.S. 630, 637 (1967) (quoting United States v. Machintosh, 283 U.S. 605, 626 (1931)).

**B. SUMMARY JUDGMENT STANDARD**

This matter is presently pending before the Court on Respondent's Motion for Summary Judgment and therefore Rule 56 of the Federal Rules of Civil Procedure applies. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admission of file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the moving party must demonstrate to the court the basis of its motion, "identifying those portions of the pleadings . . . together with the affidavits" which it believes demonstrates the absence of a genuine issue of material fact. Celotex v. Catrett, 477 U.S. 317, 323 (1986). The adverse party must then show in its response "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Moreover, "in ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party." Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 150 (6th Cir. 1995). See Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 25 (1st Cir. 2006).

---

[4] Petitioner recognizes that his petition for review does not specifically request a hearing *de novo* on review of the application. However, Petitioner, through counsel, expects to file a motion for hearing on the application following submission of this objection to summary judgment.

As discussed, below, there are a number of material facts in issue that, if found in a light most favorable to the Petitioner, would require a finding that the Petitioner did possess the requisite good moral character during the pendency of his application for naturalization.

**C. GOOD MORAL CHARACTER**

An applicant for naturalization must be "a person of good moral character, attached to the principles of the Constitution of the United States" for at least five years prior to the date of application and remain a person of good moral character through the date of admission to citizenship. 8 U.S.C. 1427(a). Although CIS will evaluate claims of good moral character on a case-by-case basis, certain persons are denied naturalization based on statutorily proscribed conduct. The First Circuit describes these categories of conduct as "*per se* lacking in good moral character." Opere v. INS, 267 F.3d 10, 13 (1st Cir. 2001).

In this case, Petitioner was denied naturalization based on 8 U.S.C. § 1101(f), which prohibits naturalization when the applicant has provided false testimony for the purpose of obtaining immigration benefits. Title 8, section 1101(f)(6), of the United States Code provides that:

> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established is, or was . . . one who has given false testimony for the purposes of obtaining any benefits under this chapter.

8 U.S.C. § 1101(f)(6). In addition, 8 C.F.R. § 316.10(b) also provides that:

> An applicant shall be found to lack good moral character, if the applicant . . . [h]as given false testimony to obtain any benefits from the Act, if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit; this prohibition applies regardless of the whether the information provided in the false testimony was material, in the sense that if given truthfully it would have rendered ineligible for benefits either the applicant or the person on whose behalf the applicant sough the benefit.

The Supreme Court notes that the purpose of 8 U.S.C. § 1101(f) is to identify applicants

who exhibit a lack of good moral character. Kungys v. United States, 485 U.S. 759, 780 (1988) "Lack of good moral character appears to some degree whenever there is a subjective intent to deceive, no matter how material the deception." Id.

Determining whether a false statement constitutes false testimony for the purpose of obtaining immigration benefits requires the statement to possess several characteristics.

First, the Court must find that the false statement consists of "testimony," or specifically, an oral statement made under oath. Kungys, 485 U.S. at 780. Thus, other types of misrepresentations or concealments, such as falsified documents, or statements not made under oath do not qualify as false testimony. Id.

Second, the false testimony must have been provided "with the subjective intent of obtaining immigration benefits." Kungys, 485 U.S. at 780. Willful misrepresentations made for other reasons, such as embarrassment, fear, or a desire for privacy, do not constitute statements made with the subjective intent to deceive required to find the lack of good moral character. Id.

Because the specific intent to deceive must arise through oral testimony of the Petitioner, the focus of the inquiry is on the Petitioner's oral statement at his interview on December 6, 2004. Although Petitioner does not contest his failure to disclose on his naturalization application the February 12, 1986 arrest in Richmond, Virginia, Respondents' conclusion that Petitioner failed to disclose the arrest in statements he made during the December 6, 2004 interview is a genuine fact in dispute. In his affidavit, Petitioner states that he informed the interviewer of the existence of a "false arrest" in Virginia, but that he blocked the incident out of his mind. (Aff. of Louis, ¶ 7.) In addition, the Petitioner provided the interviewer with a police report that he obtained from the Brockton Police Department, which he believed comprised the entirety of his police arrest record. (Aff. of Louis, ¶ 4.)

The Respondent has provided a copy of Petitioner's "corrected" application of naturalization indicated notes from the examiner that purport to show that Petitioner testified that there were "no other arrests or records." (Resp.'s Mem. S.J. Ex. 1, Attach. D at 10.) These notations, however, are not so clear. The notes actually contain the word "misunderstood," suggesting the possibility of confusion on behalf of either the Petitioner or the examiner. See id. Because the nature and true content of the examiner's notes purport to reflect what Petitioner orally testified, the true meaning, context, and content of the notes are a material fact in issue. Moreover, the examiner's notes are contradicted by the attested statements of Petitioner. (See Aff. of Louis, ¶ 6-8.)

In fact, Petitioner's statements during the interview conform to his later assertions during the administrative appeal that he "blocked out" the incident "due to the nature of the situation" and it being "the most serious. . . part in my life." (See Resp.'s Mem. S.J. Ex. 1, Attach. G at 2.) Respondents dismiss the Petitioner's assertion that he blocked out the incident as not credible in light of the fact he went to trial. . (See Resp.'s Mem. S.J. at 11.) However, Petitioner has no recollection of ever informing the CIS interviewer that he went to trial. (Aff. of Louis, ¶ 14.)

Indeed, Petitioner did not substantively recall the arrest and charge in Virginia until after receiving the denial of application by CIS where the incident was referenced. (See Aff. of Louis, ¶ 10.) In addition, Petitioner's recollection of the details of that incident, which Petitioner admits are vague even to this day, were learned after later speaking with his parents following the denial of his application. (Aff. of Louis, ¶ 11-12.)

Although Respondents describe the twenty year-old incident as one which the Petitioner simply "forgot," Petitioner has consistently described that matter as one which he "blocked" from memory almost entirely. From a review of the details that Petitioner does recall, it is easy

to understand why. Petitioner arrived in the United States in 1983 from the Commonwealth of Dominica at the age of eighteen (18). Three years later, at the age of twenty-one (21), Petitioner was arrested by the Richmond, Virginia police. Petitioner was charged with armed robbery with a dangerous firearm, a crime for which Petitioner had absolutely no involvement or connection. (See Aff. of Louis, ¶ 14-17.) Petitioner later learned that a police dog had picked up a "hot scent" from the scene of the crime, a convenience store located behind his apartment complex, leading to the apartment complex where Petitioner lived. (See Aff. of Louis, ¶ 12.) The police had apparently made inquiry with residents of the apartment complex looking for a black male, based on a description provided by the victim, a store clerk. Id. Being the only black male residing in the apartment complex, police located and entered Petitioner's apartment and removed a photograph of Petitioner from which the store clerk made an identification. Id.

It is obvious from the nature of Petitioner's arrest, and the testimony in his affidavit, that Petitioner was ultimately acquitted based on fabricated and/or faulty evidence. Given the nature and circumstances of this incident, it is credible that Petitioner simply blocked this matter from his mind. In his words, "I was falsely arrested and believed the case was a big mistake I blocked this incident from my mind for years due to the nature." (Resp.'s Mem. S.J. Ex. 1, Attach. G at 3.) Petitioner described the accusation and arrest as shocking and traumatizing. (Aff. of Louis, ¶ 13-17.) Thus, at the time of the interview, Petitioner could not have possessed the subjective intent necessary to deceive the government about his arrest.[5]

Respondents cite two cases in support of its argument that Petitioner's claim that he

---

[5] Moreover, the is no reason why the Petitioner would want to conceal an obvious case of mistaken identity and subsequent acquittal but for the fact that he simple blocked the matter from his mind entirely.

blocked out the 1986 Virginia arrest is not credible (See Resp.'s Mem. S.J. at 11.) In Butt v. U.S. Citizenship and Immigration Services, the applicant's petition for naturalization was denied because the applicant failed to disclose an arrest that occurred three years prior to his application. No. 06-805, 2007 WL 446922, at *4 (D.N.J., Feb. 7, 2007.) The applicant claimed that he "forgot" about the arrest, notwithstanding that CIS notified the applicant about his arrest record prior to the interview. Id. Similarly, in Ngyuyen v. Monica, the applicant's naturalization petition was denied because she failed to disclose several arrests. 3:CV-5-1321, 2006 Wl 3437543, at *3-4 (M.D. Pa. Nov. 29, 2006). The applicant claimed she was "nervous and could not remember." Id. However, in Ngyuyen, the applicant's most recent arrest was only nine months prior to her application for naturalization. In this case, Petitioner's Virginia arrest occurred eighteen years prior to his application for naturalization. Unlike Butt and Ngyuyen, the severe and emotional nature of Petitioner's arrest, the Petitioner's desire to block it out of his mind to get on with his life, and the extremely lengthy period of time that passed from the arrest to the date of his application for naturalization, support the absence of specific intent of Petitioner to deceive the government into affording him an immigration benefit. See Klig v. United States, 296 F.2d 343, 346 (2nd Cir. 1961) (noting that perfection is not required in our new citizens

Whether Petitioner gave false testimony with the specific intent to obtain an immigration benefit is itself a question of fact, and certainly one, under the facts and circumstances of this case, that should not be decided on a motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court deny and dismiss Respondents' Motion for Summary Judgment and find in favor of the Petitioner.

Respectfully Submitted,

/s/ David C. Clarke

David C. Clarke, Esq. (#6376)
**BLAIS CUNNINGHAM & CROWE CHESTER**
150 Main Street, P.O. Box 1325
Pawtucket, Rhode Island 02862
(401) 723-1122 (tel)
(401) 726-6140 (fax)
dclarke@blaislaw.com

Dated: August 27, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as nonregistred participants on August 27, 2007

/s/ David C. Clarke