UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PHILLIP J. LOUIS,

Petitioner,

VS. C.A. No. 07-134ML

ALBERTO R. GONZALES, as Attorney General of the United States, et al.

Respondents.

**AFFIDAVIT OF PHILLIP J. LOUIS**

I, Phillip J. Louis, Petitioner in the above referenced matter, make the following affidavit pursuant to F.R.C.P. 56(e) in support of Petitioner's Objection to Respondents' Motion for Summary Judgment based on my personal knowledge of the facts of the case herein.

1. I presently reside at 52 Borinquen Street in Providence, Rhode Island.

2. On April 19, 2004, I filed an application for naturalization, Form N-400, with the United States Citizens and Immigration Service ("CIS").

3. Sometime in July, 2004, I received a letter from CIS dated July 10, 2004, that requested me to bring additional information, including a certified copy of my arrest record, photographs, copies of my green card, marriage certificate, and other documentation to my interview.

4. I obtained a copy of my police report from the police department in Brockton, Massachusetts, where I lived at the time. I thought that the police record would be a complete record of all of my police arrests.

5. On December 6, 2004, I was interviewed by an examiner from CIS and asked

questions about my application for naturalization.

6. At some point during the interview, the interviewer asked me if I had listed all of my arrests in the application.

7. I told the interviewer that I had some issues in Virginia where I used to live but all I know is that it involved a false arrest and that have I completely blocked it out of my mind.

8. To the best of my recollection, I do not recall telling the interviewer that I had additional arrests in Massachusetts as stated in Paragraph six (6) of the Declaration of Carole Karlowicz submitted in support of the Respondents' Motion for Summary Judgment as Ex. 1. Any additional arrests in Massachusetts that I did not list on my application must have come from the police report I provided the examiner during the interview.

9. Sometime in April, 2006, I received a Decision from CIS dated April 6, 2006 denying my application for naturalization based on the fact that I did not disclose an arrest in Richmond, Virginia on February 12, 1986.

10. When I saw the letter reference an armed robbery, I thought it was a mistake because the arrest was a false arrest, which I thought would be treated like it never happened.

11. Since I did not recall any details of that incident due to the emotional nature of the incident and that I had blocked it out of my mind, I immediately called my mother who lives in Virginia to talk about the incident.

12. After talking with my mother about the Virginia incident, I recalled some of the details, particularly:

a. A store clerk at a convenience store claimed she was robbed;

b. A police dog had picked up a hot smell in the vicinity of my apartment;

c. At the time, I was the only black male living in the apartment complex;

d. The police entered my apartment while I was at work and took a picture of me off of the wall to show to the supposed victim;

e. The store clerk did not know that I had an accent and was from another country;

f. The clerk did not provide a proper description of my hair as compared to the robber described by the clerk;

g. My girlfriend at the time kept a diary that described me as being with her at a party during the time of the robbery;

13. My impression of the Virginia incident before talking with my mother was that it was a false arrest, which I thought meant that it would be treated like it never happened.

14. I remember that I went to court, but I have no recollection, even after speaking with my mother, whether there was ever a trial. I only know that it was dismissed.

15. I was raised in a very strict Christian family. The accusation that I committed an armed robbery was shocking to me and my family. It was something that I would never have done, and I was traumatized from the incident.

16. At that time, I had a natural talent as a skilled mechanic and have always worked since high school. I would have no interest in committing a robbery, and I felt ashamed because of the accusation.

17. I felt like there was no apology from police or the government for the false

accusation. All I wanted to do after it happened was to forget about the whole incident, so I blocked it out of my mind.

18. On or about April 26, 2006, I filed a Request for a Hearing to appeal the denial of my naturalization application.

19. At an interview on September 14, 2006, the interviewer asked me about the Virginia incident and I told the interviewer what I remembered from speaking with my mother.

20. Sometime in December, 2006, I received a final decision denying my application for naturalization from CIS dated December 13, 2006.

I declare under the pains and penalties of perjury that the foregoing is true and correct to the best of my knowledge and belief.

8.24.07

Phillip J. Louis date

Subscribed and sworn to before me on this 24th day of August, 2007.

Notary Public
My commission expires: 6/19/2010